## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| CAROLYN WATSON, <br><br> *Plaintiff,* <br><br> v. <br><br> THE UNIVERSITY OF KANSAS <br><br> *Defendant.* | Case no. <br><br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Carolyn Watson ("Plaintiff"), for her Complaint against Defendant University of Kansas alleges as follows:

### Nature of the Claims

1.  This is an employment action arising from Defendant's inadequate compensation of Carolyn Watson in comparison to men in comparable positions. Plaintiff brings claims under the Equal Pay Act ("EPA"). Plaintiff has also asserted a charge of discrimination under the under Title VII of the Civil Rights Act of 1964 and under Title IX, and she intends to amend her Complaint when those claims become ripe.

2.  Plaintiff Carolyn Watson was an employee of Defendant from August 2018 until her constructive discharge in summer of 2022. During the entirety of her employment, she held the position of Director of the Orchestral Studies, and when she resigned, she was a tenured Associate Professor in the School of Music.

1

3. Men in similar roles who had similar or less experience and similar or fewer responsibilities were compensated more highly than Plaintiff.

4. Plaintiff attempted to address this income disparity with various members of the Administration, but the University refused to make any changes.

5. Thus, Plaintiff was deprived of equal pay for substantially equal work in the same establishment under the same working conditions.

## Parties

6. Plaintiff Carolyn Watson is currently a female resident of Champaign, Illinois. At all relevant times, she was employed by Defendants.

7. Defendant the University of Kansas is an employer within the meaning of the term as described in the statutes and laws that form the basis of Plaintiff's claim.

## Jurisdiction and Venue

8. This Court has jurisdiction over this action under 28 U.S.C. § 1331, which provides original jurisdiction in this Court for suits arising under federal law. More specifically, this Court has jurisdiction over Plaintiff's claim under the Equal Pay Act, 29 U.S.C. § 206(d)(1).

9. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to plaintiff's claims occurred in this district.

## Factual Allegations

10. Plaintiff is an orchestral conductor with an international reputation for excellence. In general, the field of orchestral conducting is very male dominated, with less than 10 percent of female professional conductors being less than 10 percent of the total.

11. In fact, Plaintiff was the first ever female Director of Orchestral Activities to serve in Defendant's School of Music, and on information and belief, the first ever female to lead a major ensemble area in Defendant's school of music.

12. Plaintiff joined the faculty of the School of Music for the fall semester of 2018, after winning a national search ahead of more than 100 applicants for the position.

13. According to various members of the search committee with whom Plaintiff spoke, Plaintiff was the unanimous choice of the search committee. However, after joining the faculty, Plaintiff learned that School of Music Dean Bob Walzel (who was not on the search committee) was not in favor of her appointment, and instead favored a male candidate who had not been invited to interview on campus.

14. On information and belief, Dean Walzel was so opposed to Plaintiff joining the faculty that he inquired as to whether the offer extended to Plaintiff could be rescinded.

15. Before she accepted the position, Plaintiff was concerned about the inadequate salary she was offered, especially as compared to a similarly situated male conductor (Director of Bands), who earned significantly more than she was being offered.

16. Other similarly situated male ensemble professors in the School of Music were compensated more than Plaintiff, despite her having more responsibilities. For instance, although in general, the Director of Jazz Studies conducted smaller ensembles with shorter and easier repertoires than did Plaintiff, he was more highly compensated than Plaintiff. Similarly, the *Associate* Director of Bands earned more than Plaintiff, who was the Director of the entire division of orchestra.

17. In an effort to better understand the salary gap she was presented with, Plaintiff sought the advice and guidance of Donna Ginther, Ph.D., a Professor of Economics at Kansas

University and an expert in pay inequities between men and women. Dr. Ginther agreed that the offer to Plaintiff was inadequate, and provided some informal advice about negotiating for equal pay to male professors.

18. Armed with publicly available information about male faculty members at the School of Music, and data in general about salaries for her occupation, and bolstered by her conversation with Dr. Ginther, Plaintiff attempted to negotiate her salary with Dean Walzel.

19. Dean Walzel was immediately hostile to Plaintiff's efforts to negotiate for a fair salary. He pushed her to make a decision quickly on whether to accept an offer, claiming that if she declined, the position would be offered to another candidate. However, according to multiple members of the search committee with whom Plaintiff spoke, the committee had concerns about the suitability of the alternate male candidate Dean Walzel favored.

20. Dean Walzel also criticized Plaintiff for having sought the guidance of Dr. Ginther and threatened to revoke her offer of employment if Plaintiff were to continue to voice concerns about pay inequalities between genders to other members of the faculty.

21. Plaintiff was shocked by Dean Walzel's animosity towards her because of her reported concerns about unequal pay. She wanted to work for Defendant, so she accepted the position with no further negotiation.

22. After Plaintiff arrived on Defendant's campus and had already begun serving in her role, she learned that before she accepted Defendant's offer, Dean Walzel had publicly announced that he wanted to rescind the offer of employment to Plaintiff because she had sought advice and guidance from Dr. Ginther and he considered such an action "unethical."

23. Plaintiff also learned that prior to her arrival, Dean Walzel had read her emails aloud to staff members in a mocking tone, essentially mocking her efforts to negotiate a fair

salary.

24. In contrast to Dean Walzel's refusal to negotiate Plaintiff's salary in any meaningful way, after he hired Plaintiff, he hired a male Choral Director after negotiating with the selectee to increase both his salary and his rank.

25. After Plaintiff had reported a wage disparity, Dean Walzel treated her with extreme animosity. He subjected her to disparate treatment as compared to her similarly situated male colleagues and he created a toxic environment for her.

26. Despite Dean Walzel's hostile and discriminatory treatment, Plaintiff was enormously successful during her tenure with Defendant. She brought national recognition to the orchestral program in the form of selection to perform at the 2021 National Conference of the College Orchestra Directors Association, a prestigious national conference.

27. She won two peer-reviewed national awards—the 2020 American Prize for Orchestral Performance (College/University Division) and the 2020 Ernst Bacon Prize for the Performance of American Music (College/University Division).

28. She expanded the orchestral program from one to three orchestral ensembles, adding an annual community orchestra collaboration in Fall 2018 – the Vespers Festival Orchestra, and a second full time non-auditioned ensemble, the KU University Orchestra.

29. In Fall 2018, she successfully secured an external Performance Grant for the KU orchestra from the Women's Philharmonic Advocacy, one of only two collegiate institutions to be awarded nationally.

30. In summer 2021, she also secured a donation of 20K, the largest ever, to the KU orchestral program.

31. Despite her tremendous success with the program, Plaintiff ultimately concluded that continuing to work under the supervision of Dean Walzel, who had been openly hostile to from the time she attempted to negotiate a fair salary as compared to men in the department, was untenable. So she resigned her position.

## Claim: Violation of the Equal Pay Act

32. Plaintiff performed substantially the same (or more) duties as her similarly situated male coworkers, but was paid considerably less.

33. Plaintiff's skills and experience are similar or superior to those of the male directors in the School of Music in that she has international experience, has worked with professional orchestras, operas, and ballet companies throughout the country, while none of her ensemble colleagues have comparable high-level professional experience.

34. Plaintiff was paid less than men doing the same or less work under substantially similar conditions.

35. Defendants are subject to the equal pay requirements of the Fair Labor Standards Act and the Equal Pay Act, 29 U.S.C.A. § 206(d)(1) as it is an employer as defined by the Act.

36. By paying Plaintiff less than it paid similarly situated men for similar work, Defendant violated Plaintiff's rights under the Equal Pay Act, 29 U.S.C.A § 206(d)(1).

37. Defendants' practice of paying women, including Plaintiff, less than comparably employed men, was not the result of a seniority system, a merit system, a system of compensation based on production, or any factor other than sex.

38. As set forth in the specific facts above, Defendant's conduct was willful in that the disparate compensation scheme was voluntary, deliberate, and intentional and Defendant

either knew or showed reckless disregard for whether its payment scheme was prohibited by the law.

39. As set forth in the specific facts above, Defendant had no good faith reason to think its disparate compensation complied with the Equal Pay Act; and in fact acknowledged the pay disparity without taking any action to rectify it, thus, Plaintiff is entitled to liquidated damages in an amount equal to the actual damages.

40. As a direct and proximate result of Defendant's actions and/or inaction, Plaintiff has been deprived of income and other monetary and non-monetary benefits.

41. Plaintiff is also entitled to receive attorney's fees and expense in prosecuting her claim of unfair wage practices.

WHEREFORE, Plaintiff respectfully prays judgment in her favor and against Defendant in the form of: (1) back pay and front pay; (2) lost fringe benefits in an amount yet to be determined; (3) liquidated damages equal to the amount awarded pursuant to (1) and (2) above; (4) Plaintiff's costs and expense including attorney's fees and expert witness fees; and for such other relief as the Court deems just and proper.

### Demand for Jury Trial

Plaintiff requests a trial by jury on all claims in her Complaint that may properly be submitted to a jury.

### Designation of Place of Trial

Plaintiff designates Kansas City, Kansas as the place of trial of this matter.

Respectfully submitted,

/s/ *Mark V. Dugan*
**DUGAN SCHLOZMAN LLC**
Mark V. Dugan                KS Bar

mark@duganschlozman.com
Heather J. Schlozman     KS Bar 23869
heather@duganschlozman.com
8826 Santa Fe, Suite 307
Overland Park, KS  66212
Ph 913-322-3528
Fax 913-904-0213

**Counsel for Plaintiff**

8